FILED
VANESSA L. ARMSTRONG, CLERK
JUN 3 0 2016
U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-00110-TBR-LLK

**DONNA TINDLE, as Administrator of the Estate of Jimmie W. Tindle**

v.

**HUNTER MARINE TRANSPORT, INC.**

# JURY INSTRUCTIONS

# INTRODUCTION

Members of the jury, it is now time for me to instruct you about the law that you must follow in deciding this case. I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain the elements, or parts, of the claims and defenses in question.

You have two main duties as a juror: The first is to decide what the facts are from the evidence that you saw and heard here in Court. Deciding what the facts are is your job—not mine. Nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you and to apply it to the facts. It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you during the trial and these instructions now. All of the instructions are important, and you should consider them together as a whole.

The lawyers may have talked about the law during their arguments. But if what they said is different from what I say, you must follow what I say. What I say about the law controls.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way. The law does not permit you to be governed by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all of the evidence, follow the law as I give it to you, and reach a just verdict, regardless of the consequences.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. A corporation is entitled to the same fair trial as a private individual. All persons, including corporations and other organizations, stand equal before the law and are to be treated as equals.

A corporation may act only through natural persons who are its agents or employees. Generally, any agents or employees of a corporation may bind the corporation by their acts and declarations made while acting within the scope of their duties as employees of the corporation.

You are to consider only the evidence in the case. Unless you are otherwise instructed, the evidence in the case consists of the sworn testimony of the witnesses regardless of who called the witness, all exhibits received in evidence regardless of who may have produced them, and all facts and events that may have been admitted or stipulated to. Statements and arguments by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statement, closing arguments, and at other times is intended to help you understand the evidence, but it is not evidence.

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion. In our lives, we often look at one fact and conclude from it that another fact exists. In law, we call this an "inference." You are allowed to make reasonable inferences, but any inference you make must be based on the evidence in the case.

Another part of your job as jurors is to decide how credible, or believable, each

witness was. This is your job, not mine. It is up to you to decide if a witness's testimony was believable and how much weight you think it deserves. You are free to believe everything that a witness said, or only part of it, or none of it at all. But you should act reasonably and carefully in making these decisions.

You may be guided by the witness's demeanor while on the stand, the witness's motive, and the extent to which, if at all, the witness's testimony is supported or contradicted by other evidence in the case. Inconsistencies or discrepancies in the testimony of a witness, or between the testimonies of different witnesses, may or may not cause you to discredit that testimony. Two or more persons witnessing an incident may see or hear it differently. An innocent mistake, like failing to recall something, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance and whether the discrepancy results from an innocent error or intentional falsehood.

A witness may be discredited or impeached by contradictory evidence, or by evidence that, at some other time, the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness's present testimony. If you believe any witness has been impeached or discredited, it is your task to give the testimony of that witness the credibility, if any, that you think it deserves. If a witness is shown to have knowingly testified falsely concerning any material matter, you have the right to distrust that witness's testimony on that matter or any other matter too. An act or omission is "knowingly" done if done voluntarily and intentionally, and not because of mistake or accident or some other innocent reason.

You may consider other things that you think shed some light on the witness's

believability. Use your common sense and your everyday experience in dealing with other people, and then decide what testimony you believe and how much weight you think it deserves. The weight of the evidence does not necessarily depend upon the number of witnesses who testify for either side.

During the trial of this case, certain testimony has been presented to you by way of deposition, consisting of sworn recorded answers to questions asked of the witness in advance of the trial by the attorneys for the parties to the case. The testimony of a witness who, for some reason, cannot be present to testify from the witness stand may be presented in writing under oath or in a video recording. You are to consider such testimony, to judge its credibility, and to assign it whatever weight you think it deserves in the same way as if the witness had been present and testified from the witness stand, insofar as that is possible.

Usually, a witness is not allowed to testify as to his or her opinion or conclusions. When a witness has special training or experience that you find helpful, however, that person may state his or her opinion on those technical matters. The fact that a witness of that sort has given an opinion does not mean that you must accept it. As with any other witness, it is up to you to decide whatever weight you think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all of the other evidence in the case.

You might recall that, during the trial, some witnesses with special training or experience were asked if they had been or will be compensated for their services. It is not improper for such witnesses to be compensated for services. It is a customary and accepted practice. No possible suggestion of impropriety results from compensation for

the services of a witness whom you consider to have special training and experience.

Some of you have taken notes during the trial. You may use any notes taken by you during trial. However, the notes should not be substituted for your memory. Remember, notes are not evidence. If your memory should differ from your notes, then you should rely on your memory and not your notes. You should not be influenced by another juror's notes.

When you go to the jury room, you will select one juror to act as your foreperson. The foreperson will preside over your discussions and will speak for you here in Court. You will take these instructions to the jury room. When you have reached a unanimous agreement, your foreperson will complete, date, and sign your answers. Nothing I have said or done is intended to suggest what your verdict should be. That is entirely for you to decide.

Once you start deliberating, do not talk to the marshal or to anyone else, except each other, about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and give them to the marshal. The marshal will give them to me, and I will respond as soon as I can. I may have to talk to the parties about what you have asked, so it may take some time for me to get back to you.

One more thing about messages: Do not ever write down or tell anyone outside the jury room how you stand on your votes. That should stay secret until you are finished.

Your verdict or answer to any question must be unanimous. That is, all eight (8) members of the jury must agree on any answer to the question and on the verdict. It is your duty as jurors to discuss this case and to try to reach an agreement. You must each

decide the case for yourself, but only after you have considered all of the evidence, discussed it fully with your fellow jurors, and listened to the views of the other jurors. Do not be afraid to change your opinion if the discussion persuades you that you should. But do not make a decision simply because other jurors think that it is right, or simply to reach a verdict. Your sole interest is to seek the truth from the evidence.

## GENERAL INSTRUCTIONS

Earlier, you heard testimony from Defendant Hunter Marine Transport, Inc.'s Safety Manager Jonathan Bennett that the Health Information Portability and Accountability Act of 1996, more commonly known as "HIPAA," prohibited Hunter Marine from disclosing Jimmie Tindle's health information to Captain William "Billy" Milam and other employees. HIPAA does not directly apply to employers. Instead, under federal law, an employer may disclose an employee's medical condition or history to the employee's supervisors and managers.

## INSTRUCTION NO. 1

The term "preponderance of the evidence" is used many times in these instructions and deserves some explanation before addressing the claims and defenses involved in the case. To establish something by a "preponderance of the evidence" means to prove that something is more likely so than it is not so. In other words, a preponderance of the evidence means such evidence as, when considered and compared to that opposed to it, has more convincing force, and produces in your mind a belief that what is sought to be proved is more likely true than not true. It does not, of course, require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been established by a preponderance of the evidence in the case, you may—unless otherwise instructed—consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received into evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard applicable in criminal cases. It does not apply in civil cases, such as this one. Therefore, you should disregard it.

## INSTRUCTION NO. 2

The Plaintiff, Donna Tindle, alleges that the Defendant, Hunter Marine Transport, Inc., acted negligently, causing the death of her husband, Jimmie Tindle, during the course of his employment. Hunter Marine denies that it was negligent, or that its negligence caused Mr. Tindle's death. Mrs. Tindle bears the burden of proof on her claim.

Mrs. Tindle's claim is brought under a federal law known as the Jones Act. The Jones Act permits any seaman who has suffered personal injury or death in the course of his employment to recover damages from his employer under the conditions specified in these Instructions. However, the Jones Act does not make the employer an insurer of the seaman. In order to prevail on her claim of negligence under the Jones Act, Mrs. Tindle must establish by a preponderance of the evidence:

(1) that Hunter Marine Transport, Inc. was "negligent," and,

(2) that such negligence was a "cause" of Jimmie Tindle's injuries or death.

"Negligence" is the failure to use reasonable care. Reasonable care is that degree of care a reasonably careful person would use under like circumstances. Negligence is either in doing something that a reasonably careful person would not do, or failing to do something a reasonably careful person would do, under like or similar circumstances. The amount of care exercised by a reasonably careful person varies in proportion to the risk known to be involved in light of the surrounding circumstances, and so the amount of caution required, in the exercise of reasonable care, will vary too. To put it another way, as the danger that should reasonably be foreseen increases, so the amount of care required by law also increases.

Negligence under the Jones Act may consist of a breach of, or failure to comply with, a duty required by law. Employers of seamen have a duty to act with reasonable care to provide their employees a reasonably safe work environment. They must also provide, or arrange to provide, prompt and adequate medical care for a seaman who is in need of medical treatment, regardless of whether the seamen makes a distinct request for such aid. The scope of that duty depends upon the circumstances of the case—the seriousness of the injury or illness and the availability of aid. A seaman's employer is responsible for the negligence of one of its employees while that employee is acting within the course and scope of his employment.

The occurrence of an accident, standing alone, does not mean that anyone was negligent or that anyone's negligence caused the accident. Likewise, the fact that an employer conducts its operations in a manner similar to that of other companies is not conclusive as to whether the employer was negligent or not.

Negligence is a "cause" of injury if it played any part, no matter how small, in bringing about the actual injury. So, if you find from the evidence in the case that any act or omission of Hunter Marine, however slight, contributed in any way toward any of Mr. Tindle's injuries or death, you may find that his injuries or his death were caused by Hunter Marine's negligence.

There can be more than one cause of an injury. That is, negligence may be a "cause" of injury even though it operates in combination with the act of another or some natural cause. The involvement of any other cause does not prevent a finding for Mrs. Tindle, so long as you find that Hunter Marine's negligence played any part, no matter how slight, in causing Jimmie Tindle's injuries or death.

## INSTRUCTION NO. 3

In addition to denying that it was negligent, or that its negligence was a cause of Jimmie Tindle's injuries or death, Hunter Marine Transport, Inc. raises the defense of contributory negligence. That is, Hunter Marine argues that Mr. Tindle was also negligent, and that his negligence was a cause of his injuries or death. Hunter Marine bears the burden of proof on this defense. If you find Mr. Tindle was contributorily negligent, Donna Tindle may still recover. However, the amount of her recovery will be reduced by the extent of Mr. Tindle's contributory negligence.

To establish its defense, Hunter Marine must establish by a preponderance of the evidence:

(1) that Jimmie Tindle was also "negligent"; and,

(2) that such negligence was a "cause" of his injuries or death.

"Negligence" is the failure to use reasonable care. A seaman is obligated under the Jones Act to act with reasonable care. Reasonable care is that degree of care a reasonably careful seaman would use under like circumstances. The circumstances of a seaman's employment include not only his reliance on his employer to provide a reasonably safe work environment, but also his own experience, training, and education. In other words, under the Jones Act, a seaman has the duty to exercise that degree of care for his own safety that a reasonable seaman would exercise in like circumstances.

Negligence is a "cause" of injury if it played any part, no matter how small, in bringing about the actual injury. So, if you find from the evidence in the case that any act or omission of Mr. Tindle, however slight, contributed in any way toward any of his injuries or death, you may find that his injuries or his death were caused by his

contributory negligence.

If you found that Hunter Marine was negligent, and that its negligence was a cause of Mr. Tindle's injuries or death (as discussed in Instruction No. 2), but you also find that Mr. Tindle's own negligence was a cause of his injuries or death, then you must determine the percentage that Mr. Tindle's negligence contributed to his injuries or death. You will provide this information by filling in the appropriate blanks at the end of these Instructions. Do not make any reduction in the amount of damages that you award to Mrs. Tindle. I will reduce the damages that you award by the percentage of contributory negligence that you assign to Mr. Tindle, if any.

## INSTRUCTION NO. 4

If you find for the Plaintiff, Donna Tindle, on her Jones Act negligence claim, you must determine her "damages." Mrs. Tindle has the burden of establishing her damages by a preponderance of the evidence. "Damages" is the amount of money which will reasonably and fairly compensate Mrs. Tindle for any injury you find was caused by Hunter Marine Transport, Inc.'s negligence.

If you find that Mrs. Tindle has carried her burden of proof, she may recover two types of damages.

The first type of damages that Mrs. Tindle may recover for the loss of support and other financial benefits that Jimmie Tindle's family would have received from him. If you find that evidence in the case establishes a reasonable likelihood of loss of future support, then you must determine the present worth in dollars of that loss, since the award of future damages necessarily requires that payment be made now for a loss that will not actually be sustained until some future date. You may also consider the fact that changes take place in the purchasing power of money and in the cost of living.

In order to make a reasonable adjustment for the present use, interest free, of money representing a lump-sum payment of anticipated future loss, the law requires you to discount, or reduce to its present worth, the amount of future loss by taking (1) the interest rate or return on investment that Mrs. Tindle could reasonably be expected to receive on an investment of the lump-sum payment, together with (2) the period of time over which the future loss is reasonably certain to be sustained. Next, you must reduce, or in effect deduct from, the total amount of anticipated future loss whatever that amount would be reasonably certain to earn or return if invested at such a rate of

interest over such future period of time. Include in the verdict only an award for the present-worth—the reduced amount—of anticipated future loss.

The second type of damages that Mrs. Tindle may recover is for the pain and suffering experienced by Mr. Tindle before he died. Mental or physical pain and suffering are intangible things about which no evidence of value is required. In awarding these damages, you are not determining value, but you should award an amount that will fairly compensate Mr. Tindle for his pre-death pain and suffering.

Any award you make to Mrs. Tindle is not subject to income tax. Neither the state nor the federal government will tax it. Therefore, you should determine the amount that Mrs. Tindle is entitled to receive without considering the effect of taxes upon it.

In fixing the amount of your award, you may not include in, or add to an otherwise just award, any sum for the purpose of punishing Hunter Marine, or to serve as an example or warning for others. You may not include in your award any sum for court costs or attorney fees.

Page 15 of 19